UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 10-20635-CR-LENARD/TURNOFF

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

RANDAL LANZAS,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Defendant Randal Lanzas' ("Defendant") Motion to Suppress Photo Lineup and In-Court Identification **[DE56]**, and an Order of Referral entered by the Honorable Joan A. Lenard on November 3, 2010. **[DE63]**. A hearing on this Motion **[DE56]** took place before the undersigned on November 30, 2010.

Upon review of the Motion **[DE56]**, the Response **[DE 68]**, hearing testimony from the witnesses and argument from counsel, the undersigned makes the following findings.

### Background

Defendant was charged by way of a seven (7) count Superceding Indictment **[DE39]** that charges him with, among other things, conspiracy to commit Hobbs Act robberies. In this connection, Defendant was also charged with substantive robbery counts. By way of summary, this matter involves the armed robbery of American Worldwide Academy ("AWA") on July 15, 2010. Id. According to the Superceding Indictment **[DE39]**, two men armed with handguns entered AWA and ordered everyone present to the floor. They stole money and cellular telephones from several of the victims. Id.

On July 22, 2010, law enforcement officers with Miami-Dade County's STOP Unit ("Street Terror Offender Program") were able to track one of the stolen cellular telephones to a group of individuals standing on near a housing complex. Hr'g Tr. 30:15-20; 32:19-23. Once in the area, officers called the stolen phone and caused it to ring. The phone rang in the pocked of Co-Defendant Miguel Hebbert ("Hebbert"). Hr'g Tr. 34:9-12. All of the individuals standing in the group, including Defendant, had been detained prior to the phone being called. Hr'g Tr.34:18-25. Subsequently, Hebbert, Defendant, and several others were arrested. Hr'g Tr. 35:14-17.

Further factual details surrounding the robbery, the tracking of the cellphone and the subsequent arrests are of record. Accordingly, the Court need not recite same for present purposes.

### Defendant's Motion to Suppress Identification Testimony

Defendant seeks the suppression of all out-of-court identifications made by several witnesses based on photo lineups, as well as anticipated in-court testimony. In support of the Motion **[DE56]**, Defendant argues, among other things, that the photo display wherein identification was made with a 99% certainty, by victim A.S, was impermissibly suggestive, because Defendant's picture is depicted as much lighter than the other five individuals depicted therein. Defendant makes the same argument as to the identification made with a 53% certainty, by victim K.B., which was also made using the same photo display. Id.

The Government opposes the Motion. Specifically, the government asserts that both photo lineups contained pictures of light-skinned Hispanic males with similar short hair, light facial hair, and light "strip" beards – all of which fit Defendant's appearance. **[DE68]**. The Government contends that any lighter appearance on Defendant's photo is only slight, and that all six photographs have similar, if not identical lighting, and depict males with similar facial feature. The Government further argues

2

that even if the Court finds suggestiveness, the identifications are still reliable under the "totality of the circumstances" test. Having reviewed the evidence and applied the relevant law to the circumstances at hand, the undersigned agrees.

### Applicable Law

In determining the constitutionality of an identification procedure, the Court must conduct a two-step analysis. Cikora v. Dugger, 840 F.2d 893, 895 (11th Cir. 1988). In the first step, the court must determine whether the identification procedure used was unduly suggestive. See United States v. Garcon, 2008 WL420041 (S.D.Fla.)(quoting Williams v. Weldon, 826 F. 2d 1018, 1021 (11th Cir. 2007). "If not, that ends the inquiry." Id. If the Court finds suggestiveness, the Court must determine whether based upon the totality of the circumstances, the identification was reliable. See Neil v. Biggers, 409 U.S. 188, 198 (1972).

In determining suggestiveness, the focus of the inquiry is whether the lineup suggests which individual the witness should identify, thereby creating a likelihood of misidentification. See Neil 409 at 198. In this connection, a photo line up depicting Defendant's photo in color, while portraying all others in black and white has been found to be overly suggestive. Q'Brien v. Wainwright, 738 F.2d 1139, 1414 (11th Cir. 1988). However, a lineup in which defendant's photo was the only one with height markings was not overly suggestive. Cikora v. Pubber, 840 F. 2d 897-898. A line up depicting defendant as the only individual wearing glasses has likewise been found to be appropriate. United States v. Ricks, 817 F. 2d 692 (11th Cir 1987); see also, Williams, 826 F. 2d 1018 (photo line up was not unduly suggestive despite the fact that defendant was the only black man in the array).

*Suggestiveness*

The Government correctly notes that the two challenged photo line-ups depicted only young

3

light skinned Hispanic males of approximately the same age. Here, each photo contained a head shot of approximately the same size. Further, each of the individuals depicted had similar facial features, hair styles and facial hair. Upon review, nothing in Defendant's photo stands out from the rest in the array.

The supposed lighting or lighter appearance is at best, quite slight.

Additionally, both officers (Sergeant McKinney and Detective Desir) testified that as part of the identification process, the witnesses were either instructed[1] as to things that they should avoid when reviewing the photos, i.e., the types of things they should and should not focus on. The paragraph specifically cautions, *inter alia*, that photographs do not always depict the true complexion of a person – it may be darker or lighter than reflected in the photo. Hr'g Tr. 18:7-14; 37:1-8; 41:8-12; 54:9-20; 63:2-14; 64:8-18.

Consistent with the above, and upon careful review, the undersigned finds that the evidence reveals a well balanced photo array and therefore finds that same was not suggestive.

*Totality of the Circumstances*

Having found that the photo-line up was not overly suggestive, the Court need not address the second prong, i.e., whether the identification was reliable under the totality of circumstances. However, for purposes of a complete record, the undersigned shall very briefly address these issues.

Typically, courts consider five factors in determining whether the identification was reliable; they are: (1) the opportunity of the witness to view the suspect at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the suspect, (4) the level of certainly demonstrated by the witness at the confrontation, and (5) the length of time between the crime

---

[1]The paragraph was either read to the witnesses by the officers, or read by the witnesses themselves.

and the confrontation. O'Brien v. Wainwright, 738 F. 2d 1141 (11th Cir. 1988).

Here, the Government correctly notes that each victim had the opportunity to observe Defendant – with most[2] of his face exposed – at the time of the robbery as he held them at gunpoint and demanded money. Further, the victims noted that their attention was focused on Defendant from the moment he entered the store brandishing a firearm. Specifically, A.S. recalls having a lot of "face-to-face" time where he was looking at Defendant directly. Hr'g Tr. 24:15-23. According to A.S., he was able to "look piercing dead at him." Hr'g Tr. 12:19-23. He further indicates that he was able to clearly focus on his eyes, eyebrows and the bridge of his nose. Hr'g Tr. 13:21-25; 14:1-4.

In this connection, A.S. identified Defendant with 99% certainty. Hr'g Tr. 20:2-5. He specifically describes having gotten a "chilling feeling" upon observing Defendant's photo. Hr'g Tr. 19:2-6 He also noted that the image in the photo had been "burned into [him]." Id. N.S., a third victim, was able to identify Defendant with 90% certainty. See Gov's Ex. 5. As correctly noted by the Government, the mere fact that another witness identified this same Defendant greatly reduces the likelihood of misidentification.

Further, the victims made their identifications within, at most, two weeks of the robbery. Lastly, nothing in the record suggests that any of the victims' descriptions – prior or subsequent – have changed.

Upon consideration of the totality of the circumstances, the testimony of the law enforcement officers, the witnesses' testimony, and the applicable law, the undersigned finds that the identification at issue is reliables. Consistent with the above and foregoing, it is hereby **RESPECTFULLY RECOMMENDED** that Defendant's Motion to Suppress Identification Testimony **[DE 58]** be

---

[2]The record indicates that Defendant wore a bandana that covered the bottom part of his face. Hr'g Tr. 13:21-25.

**DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1)( C), the parties may file written objections to this Report and Recommendation with the Honorable Joan A. Lenard, United States District Judge, within fourteen (14) days of receipt. Failure to file timely objections shall bar the parties from attacking on appeal any factual findings contained herein. RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149, reh'g denied, 7 F.3d 242 (11th Cir. 1993); LoConte v. Duggar, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958, 109 S. Ct. 397 (1988).

**RESPECTFULLY RECOMMENDED** in Chambers at Miami, Florida on this 23rd day of December 2010.

_____
**WILLIAM C. TURNOFF**
**UNITED STATES MAGISTRATE JUDGE**

cc:   Hon. Joan A. Lenard
      Counsel of Record